**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TANAIR D. O., o/b/o K.D.R., | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| FRANK BISIGNANO, | : | |
| Commissioner of Social Security, | : | |
|     Defendant. | : | NO.  25-3146 |

**<u>MEMORANDUM</u>**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                 April 29, 2026

      Tanairi D. O., on behalf of her son, K.D.R. ("Plaintiff"), seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for Childhood Supplemental Security Income ("Child SSI") under Title XVI of the Social Security Act.  Plaintiff has filed a brief in support of his request for review, the Commissioner has responded to it, and Plaintiff has replied.  For the reasons set forth below, Plaintiff's request for review is granted.

**I.       PROCEDURAL HISTORY**[1]

      On April 30, 2022, when he was ten years old, Plaintiff's mother protectively applied for Child SSI under Title XVI of the Social Security Act, alleging disability with an onset date of January 1, 2018.  R. 29.  The claim was initially denied on January 24, 2023, and upon reconsideration, on June 23, 2023.  R. 29.  Therefore, Plaintiff requested a hearing.  On May 29, 2024, represented by counsel, Plaintiff and his mother telephonically appeared before Jennifer Specter, Administrative Law Judge ("the ALJ").  R. 51-64.  Plaintiff's mother testified at the

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

hearing.  R. 51-64.  On November 1, 2024, using the three-step sequential evaluation process for childhood disability,[2] the ALJ issued an unfavorable decision.  R. 23-40.  The Social Security Administration's Appeals Council subsequently denied Plaintiff's request for review, on February 24, 2025, R. 11, making the ALJ's findings the final determination of the Commissioner.  Both parties have consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

A.    <u>Personal History</u>

Plaintiff, born on April 1, 2012, was twelve years old[3] at the time of the administrative hearing.  R. 61.  As a minor, he has no past relevant work and resides with his mother, father, and three siblings.  R. 52-53.

B.    <u>Testimony of Plaintiff's Mother</u>

Plaintiff's mother testified that her son has difficulty concentrating at home and at school. R. 55.  He has previously received detention for constantly standing and talking in class.  R. 55. Despite having an Individual Education Plan ("IEP"),[4] Plaintiff performs poorly in school.  *Id.*  He

---

[2] The Social Security Regulations provide the following three-step sequential evaluation for determining whether a claimant under the age of 18 disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 416.924(a).
>
> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 416.924(a).
>
> 3.  If the claimant's impairment meets, medically equals, or functionally equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise, a finding of not disabled is directed.  *See* 20 C.F.R. § 416.924(a).

[3] Plaintiff was classified as a "school-age child" at the time of application and later became an "adolescent" at the time of the hearing.  20 C.F.R. § 416.926a(g)(2)(iv) & (v).

[4] An IEP is a document created for children with a learning disability or emotional disturbance that addresses the provision of special education and other services.  *IEP and 504 Service Agreements*, Pennsylvania Department of Education, https://www.pa.gov/agencies/education/programs-and-services/instruction/elementary-and-secondary-education/homebound-instruction/ieps-and-504-service-agreements (last visited March 31, 2026).

also has difficulty focusing, experiences extreme anxiety, reads at a third-grade level while in the sixth grade, disrespects his teachers, throws tantrums, and urinates and defecates on himself both at home and at school. R. 54.

Plaintiff's mother also testified that he does not get along well with others. R. 53-54. He screams and fights with his siblings and, if his older sister touches him or anything he is holding, he will hit her, scream, and sometimes push her to the ground. R. 54. Plaintiff also does not like to be touched by anyone. *Id.* At school, he has difficulty getting along with and had hit classmates, resulting in detention. R. 55-56. Plaintiff has been bullied at school and hit in the face. R. 56. He does not have any friends. R. 61.

Plaintiff's mother testified about his difficulties at home. She assists him with his homework, but Plaintiff screams and throws tantrums when he needs help or does not understand the material. R. 57, 63. When she explains something to him or gives him instructions, he does not pay attention. R. 61. Plaintiff's mother washes his hair and must instruct him to brush his teeth and take a shower. *Id.* He performs no chores at home and typically screams and throws a tantrum when asked to do so. *Id.*

Plaintiff takes Buspirone for anxiety and Clonidine to facilitate sleep. R. 59. Now, with medication, he sleeps well; however, before taking medication, he woke up three to four nights per week from nightmares and urinated on himself. R. 59. Plaintiff attends weekly therapy. R. 58. After school, he sometimes goes outside, although he does not like doing so. R. 62. Plaintiff enjoys playing with Legos and drawing, but he cannot follow the Lego building plan, which he is unable to understand; this frustrates him. *Id.* He typically spends ten to fifteen minutes on each activity. *Id.*

### III.   THE ALJ'S FINDINGS

In her decision, the ALJ issued the following findings:

1.  [Plaintiff] was born on April 1, 2012.  Therefore, he was a school-age child on April 30, 2022, the date application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).

2.  [Plaintiff] has not engaged in substantial gainful activity since April 30, 2022, the application date (20 CFR 416.924(b) and 416.971 et seq.).

3.  [Plaintiff] has the following severe impairments: attention deficit hyperactivity disorder (ADHD), developmental delay, social anxiety disorder, autism spectrum disorder, and selective mutism (20 CFR 416.924(c)).

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5.  [Plaintiff] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6.  [Plaintiff] has not been disabled, as defined in the Social Security Act, since April 30, 2022, the date the application was filed (20 CFR 416.924(a)).

R. 30-31, 40.

### IV.   DISCUSSION

A.   Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d

34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Child Disability Proceedings

To establish a disability under the Act, a claimant under the age of eighteen (18) must show a "medically determinable physical or mental impairment, which results in marked and severe functional limitations which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. § 416.906.

In establishing disability, the claimant must demonstrate:   (i) he is not engaged in substantial gainful activity; (ii) he has a "severe" impairment or combination of impairments; and (iii) his impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the Listings. 20 C.F.R. § 416.924(a). To meet or functionally equal a mental health Listing, a claimant must have an *extreme* limitation in one domain of functioning or *marked* limitations in two domains. 20 C.F.R. § 416.925 (b)(ii), 20 C.F.R. § 416.926a (a). The claimant bears the burden at each step. 20 C.F.R. § 416.924(a).

C.      Review of the Administrative Law Judge's Decision

Applying the three-step sequential evaluation process for children, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act because his impairments did not meet, medically equal, or functionally equal a Listing. R. 30-40. Plaintiff disputes the

5

ALJ's finding of non-disability for several reasons. Pl. Br. at 1-17. First, Plaintiff contends that the ALJ erred in concluding that he did not meet a Listing, because his Wechsler Intelligence Scale for Children-Fifth Edition (WISC-V)[5] test score ("IQ score") of 53 should have resulted in *extreme* limitations in the mental functional area of understanding, remembering, and applying information. Pl. Br. at 9-12. Second, Plaintiff similarly argues that his IQ score should have resulted in *extreme* limitations in the functional equivalence domain of acquiring and using information. Pl. Br. at 12-14. Third, Plaintiff argues that the ALJ's findings of less than marked limitations in the mental functioning areas of interacting with others and concentrating, persisting, or maintaining pace are contradicted by the record. Pl. Br. at 14-15. Fourth, Plaintiff asserts that the ALJ's finding of less than marked limitations in the functional equivalence domain of interacting with others was unexplained and erroneous. *Id.* Finally, Plaintiff argues that the ALJ's finding of less than marked limitations in the functional equivalence domain of attending and completing tasks is legally erroneous and unsupported by the evidence. Pl. Br. at 15-17. The Commissioner disputes Plaintiff's arguments. Resp. at 1-12. The court finds meritorious Plaintiff's argument that the ALJ erred in finding less than *extreme* limitations in the functional equivalence domain of acquiring and using information and will address that argument before turning to Plaintiff's remaining arguments, which fail.

The ALJ concluded that Plaintiff's impairments did not meet Listings 112.06 (anxiety and obsessive-compulsive disorders), 112.10 (autism spectrum disorder), 112.11 (neurodevelopmental disorders), 112.14 (developmental disorders in infants and toddlers)[6], 12.06 (anxiety and

---

[5] "The WISC-V is a general assessment that determines a full-scale IQ and breaks down its results by subject area, giving the evaluator specific indications of the [student's] cognitive strengths and needs." *Michael F. by & through Kevin F. v. Upper Darby Sch. Dist.*, No. 21-5653, 2023 WL 2815940, at *2 (E.D. Pa. Apr. 6, 2023).

[6] The ALJ should not have considered this Listing because it only applies to children from birth until age three. Appendix 1 § 112.00(A)(1).

obsessive-compulsive disorder – adult)[7], 12.10 (autism spectrum disorder – adult), or 12.11 (neurodevelopmental disorders – adult).  R. 31.  To meet a Listing, Plaintiff's medically determinable impairments must satisfy all the criteria of the Listing.  20 C.F.R. § 416.925 (a), (d). Listings 112.10, 112.11, 112.14, 12.10, 12.11, and 12.14 require satisfaction of the "paragraph A" and "paragraph B" criteria, and Listings 112.06 and 12.06 require satisfaction of the "paragraph B" and "paragraph C" criteria.  20 C.F.R 404, Subpart P, Appendix 1 §§ 12.00(A)(2)(b), 112.00(A)(2) ("Appendix 1 §§ 12.00(A)(2)(b), 112.00(A)(2)").  Plaintiff disputes the ALJ's "paragraph B" determinations.  Pl. Br. at 1-17.  The "paragraph B" criteria are the same across all six relevant Listings and are met by demonstrating either an *extreme* limitation in one, or *marked* limitations in two, of the following areas of mental functioning:  (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  Appendix 1 §§ 12.00(E)(1)-(4), 112.00(A)(2)(b).

The ALJ also concluded that Plaintiff's impairments did not functionally equal a Listing. R. 31-32.  The ALJ considers each of the following domains for functional equivalence:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  When determining whether Plaintiff's impairments meet, medically equal, or functionally equal a Listing, an *extreme* limitation reflects an inability to function independently, appropriately, or effectively on a sustained basis, whereas a marked limitation seriously restricts that ability.  Appendix 1 § 12.00(F)(2)(d)-(e), 20 C.F.R. § 416.926a(e)(2)-(3).

---

[7] A child may be evaluated using the criteria for either the adult or child Listings. However, an adult may be evaluated only using criteria for adult listings.  *Burton v. Berryhill*, 267 F. Supp. 3d 520, 525 (E.D. Pa. 2017) (citing 20 C.F.R. § 416.925(b)(2)(i)).

1.   The ALJ improperly discounted Plaintiff's valid and reliable IQ score

Plaintiff argues that the ALJ erred in finding that he had only *marked* limitations in the functional equivalence domain of acquiring and using information because she improperly discounted his valid and reliable full-scale IQ score of 53.  Pl. Br. at 9-12.  This argument has merit.

The domain of acquiring and using information measures "how well [a child] acquire[s] or learn[s] information, and how well [the child] use[s] the information" learned in school.  20 C.F.R. § 416.926a(g).  "It involves being able to perceive relationships, reason, and make logical choices." 20 C.F.R. § 416.926a(g)(1)(ii).  Plaintiff was a school-aged child at the time of application and an adolescent at the time of the hearing.

Regarding the functional equivalence domain of acquiring and using information, a school-aged child (age 6 to 12) should be able to "learn to read, write, and do math, and discuss history and science."  20 C.F.R. § 416.926a(g)(2)(iii).  The child "should [also] be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others."  20 C.F.R. § 416.926a(g)(2)(iv).  An adolescent (age 12 to 18) should be able to "use what [he] learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation)."  20 C.F.R. § 416.926a(g)(2)(v).  The child "should [also] be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas), [and] learn to apply these skills in practical ways that will help [him] enter the workplace after [finishing] school…."  20 C.F.R. § 416.926a(g)(2)(v).  "Examples of limited functioning in this domain may include the

8

inability to rhyme, sound out words, or recall important things you learned in school, difficulty solving mathematics or computing arithmetic answers, or talking only in short, simple sentences." 20 C.F.R. § 416.926a(g)(3)(i)-(v)).

The regulation for functional equivalence for children provides that a child of any age will be found to have an *extreme* limitation in a functional domain if he "ha[s] a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and [his] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(3)(iii). No single piece of evidence can in isolation establish that a child has an extreme limitation. *Id.*

Daniel Basch, Psy.D., performed the Wechsler Intelligence Scale for Children-Fifth Edition (WISC-V) IQ test and reported a full-scale intelligence score of 53, which is more than three standard deviations below the test's mean of 100. R. 53, 574-76. It is undisputed that the results were valid and reliable. R. 53, 574-76; Resp. at 7. Plaintiff's IQ score of 53 is significant and indicates that his intelligence is in the "extremely low range compared with same-aged peers." R. 575. His valid and reliable IQ score of 53 was sufficient to find that Plaintiff had *extreme* limitations in acquiring and using information unless other evidence of his day-to-day functioning showed that he was not seriously limited in this domain, for example, if he had learned to drive, shop independently, or read books near expected grade level. 20 C.F.R. § 416.926a(e)(4)(ii)(B). Because Plaintiff was only twelve years old at the time of the hearing, there is no evidence that he learned to drive or shop independently.

Here, the record is consistent with a finding that Plaintiff's intellectual functioning is very seriously limited. Plaintiff read at a third-grade level while in the fifth grade, and Plaintiff's mother testified that he read at a third-grade level while in the sixth grade. R. 54, 375. The Commissioner

9

characterizes the two-grade gap between third grade and fifth grade as "discernable yet not necessarily extraordinary." Resp. at 7. But the regulations do not require an "extraordinary" gap; they require evidence that Plaintiff read near grade level. The ALJ did not explain whether she considered a third grade reading level to be "near" a fifth or sixth grade reading level. To the contrary, it appears that a fifth or sixth grader would not be reading near grade level if he read at a third-grade level. Accordingly, this exception is not satisfied. It also appears that the regulatory considerations for discounting an extremely low IQ score, such as Plaintiff's, have not been met.

The record is also consistent with Plaintiff having very serious intellectual limitations, and the ALJ's discussion of the record was insufficient to discount Plaintiff's valid and reliable IQ score. First, the ALJ noted that Plaintiff underwent the Woodcock-Johnson IV Tests of Cognitive Abilities (WJ-IV COG) in the fourth grade. R. 34. He scored in the very low to low range, R. 335-37, specifically in the very low range for oral vocabulary, story recall, general intellectual ability, fluid reasoning, short-term working memory, and reading. *Id.* The ALJ also considered Plaintiff's Wechsler Intelligence Scale for Children – Fifth Edition (WISC-V) test scores, administered by Ms. DiPrinzo, on which he received a score of 44. R. 34. Although Ms. DiPrinzo concluded that the test was invalid because Plaintiff struggled to provide verbal responses, potentially due to social anxiety, R. 471, the results nevertheless showed that Plaintiff had very low general intellectual ability, used very few words to communicate, had expressive language below age expectations, demonstrated below-average cognitive functioning, possessed a somewhat limited general fund of information, and exhibited impaired recent and remote memory. R. 35, 467-72. Plaintiff was also unable to recall any digits forward or backward or remember any multiplication facts. *Id.* This evidence is consistent with Plaintiff having very seriously limited intellectual functioning.

10

The ALJ also considered medication management notes from Dr. Zoratti, which showed that Plaintiff's insight, judgment and recent and remote memory ranged from poor to intact. R. 35, R. 495-562. Additionally, the ALJ considered evidence that Plaintiff had an average fund of knowledge and intact ability to name and repeat phrases. *Id.* Furthermore, the ALJ explained that Plaintiff's mental status exams yielded mixed results, with insight, judgment, memory, and his ability to name and repeat phrases impaired during some exams and intact during others. R. 35. Additionally, the ALJ noted that Plaintiff had been enrolled in special education classes since fourth grade and had an IEP. R. 35. Following an IEP, Plaintiff nevertheless, performed below grade-level expectations in literacy, although his mother reported that he earned As and Bs in school. R. 35, 467.

Finally, the ALJ's discussion of Dr. Basch's caution regarding Plaintiff's IQ score was incomplete. R. 34-35. Although Dr. Basch explained that the results should be interpreted with some caution, because Plaintiff responded impulsively at times during the evaluation, he further explained that Plaintiff's difficulty maintaining attention and ADHD symptoms could themselves reflect Plaintiff's level of functioning. R. 574. In any event, Dr. Basch concluded that the test results were valid and reliable, R. 574, while further noting that Plaintiff's speech was mumbled, his expressive and receptive language were below age expectations, and his verbal comprehension index was in the extremely low range. R. 572-74.

The ALJ, therefore, could not avoid the regulatory consequence of Plaintiff's valid and reliable IQ score in light of a record consistent with very seriously limited intellectual functioning, and her attempt to discount that score was insufficient to overcome the strong evidence that Plaintiff had an extreme limitation in the functional equivalence domain of acquiring and using information. Still, it is not the court's role to reweigh the evidence. *Rutherford*, 399 F.3d at 552.

11

As discussed above, the ALJ failed to explain whether a third grade reading level while Plaintiff was in fifth and sixth grades qualifies as reading "near" grade level.  The ALJ also noted that she was unable to obtain and consider additional school records.  R. 35.  Accordingly, the court will remand for the ALJ to request and review additional evidence to determine whether Plaintiff reads "near" grade level.

     2.  <u>Plaintiff's remaining arguments regarding his IQ score fail</u>

Next, Plaintiff argues that the ALJ erred in determining that his impairments did not meet Listings 112.06, 112.10, or 112.14.  Relying on Appendix 1 § 112.00H(2)(a) and 20 C.F.R. § 416.926a, Plaintiff asserts that the ALJ erred in finding only *marked* limitations in the mental functioning area of understanding, remembering and applying information.  Pl. Br. at 9-12.  This argument fails because Plaintiff relies on inapplicable authority.  First, Appendix 1 § 112.00H(2)(a) clearly applies only to Listing 112.05, which is neither among the Listings the ALJ discussed nor among those Plaintiff challenges.  Appendix 1 § 112.00H (discussing how the Commissioner evaluates intellectual disorder under Listing 112.05).  Additionally, 20 C.F.R. § 416.926a applies only to functional equivalence; therefore, the regulation's treatment of IQ scores does not apply to the ALJ's analysis of whether Plaintiff meets a Listing.  Accordingly, this argument fails.

Plaintiff asserts that the ALJ erred because her finding of less than marked limitations in the mental functioning areas of interacting with others and concentrating, persisting or maintaining pace are contradicted by the record.  To support assertions that the evidence demonstrates *marked* limitations, Plaintiff relies upon his mother's testimony and evidence from consultative psychologists Ms. DiPrinzo and Dr. Basch.  R. 14.  This argument fails.  Plaintiff neither demonstrates that the ALJ committed legal error, nor explains how that the ALJ's findings lacked substantial evidence.  Instead, he discusses favorable evidence and argues that such evidence

should be enough to find him *markedly* limited in the two mental functional areas.  R. 11, 14.  This argument amounts to no more than a request for the court inappropriately to reweigh the evidence. *Rutherford*, 399 F.3d at 552.  Accordingly, this argument fails.

        3.  <u>No error in finding less than marked limitations in interacting and relating with others</u>

Next, Plaintiff argues that the ALJ erred because she failed to explain her finding of less than marked limitations in the functional domain of interacting and relating with others.  Citing evidence from his mother, consultative examiner Ms. DiPrinzo, and Dr. Basch, Plaintiff also contends that the ALJ should have found *marked* limitations in this domain.  Pl. Br. at 15.  These arguments fail.

First, the ALJ supported her finding that Plaintiff had less than marked limitations in interacting and relating with others.  R. 36-38.  Although the ALJ addressed three functional domains together—attending and completing tasks, interacting and relating with others, and caring for yourself—Plaintiff cites no authority prohibiting that approach, and this court is not permitted to require ALJs to write their opinions in a particular manner.  *See Hess v. Commissioner of Social Security*, 931 F.3d 198, 209 (3d Cir. 2019).

Second, Plaintiff's argument that "[d]espite [the] evidence, the ALJ found [Plaintiff] had a less than marked limitation in the domain of Interacting and Relating with Others," Pl. Br. at 15, amounts to no more than a request for the court to reweigh the evidence, which is improper. *Rutherford*, 399 F.3d at 552.  Regardless, the ALJ clearly evaluated the evidence and supported her findings, which is all that was required.  *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (finding that the ALJ properly discharged his duty by discussing favorable and unfavorable evidence before reaching a conclusion).

In support of her finding that Plaintiff was not seriously limited in his ability to interact and relate with others, the ALJ considered evidence from Dr. Basch and Ms. DiPrinzo that

13

Plaintiff had "fair" relationships with his parents, siblings, and authority figures; no exhibited homicidal ideation; maintained appropriate eye contact, was cooperative; demonstrated fair insight and judgment during some mental status exams; and exhibited a fair manner of relating and an appropriate overall presentation during some mental status exams. R. 36-38. The ALJ also considered evidence that Plaintiff displayed a cooperative attitude during appointments with his psychiatrist, Dr. Zoratti. R. 38.

The ALJ considered evidence suggesting that Plaintiff had some limitations in this functional domain, including evidence from Ms. DiPrinzo and Dr. Basch that Plaintiff was teased and bullied in school, loses his temper easily, is physically and verbally aggressive with his peers at school and siblings at home, sometimes cries and withdraws, had a poor manner of relating and social skills, and has difficult relationships with adults and siblings. R. 39-40. She also considered Plaintiff's mother's testimony that he screams, throws tantrums, gets into fights with his siblings at home and peers at school, gets bullied at school, and suffers from enuresis.[8] R. 33, 38.

Accordingly, the ALJ adequately supported her finding that Plaintiff was less than markedly limited in interacting and relating with others.

    4.  <u>The ALJ properly found less than marked limitations in attending and completing tasks</u>

Lastly, Plaintiff argues that the ALJ failed to apply the applicable regulations and mischaracterized the evidence as "somewhat mixed." Pl. Br. at 15-16. Citing evidence from Dr. Basch, Ms. DiPrinzo, Plaintiff's psychiatrist Dr. Zoratti, Plaintiff's treating psychologist, and Plaintiff's school psychologist, Plaintiff also contends that the ALJ should have found *marked* limitations in this functional domain. *Id.* The first argument fails because Plaintiff does not explain why the failure to apply the governing regulations was harmful. He simply lists evidence

---

[8] Enuresis is "the involuntary discharge of urine." *Enuresis*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/enuresis (last visited March 30, 2026).

in the record, which the ALJ considered, and argues that the ALJ should have reached a different conclusion.  Pl. Br. at 9-17.  The second argument likewise fails inasmuch as the ALJ reasonably concluded that the evidence concerning this functional domain was "somewhat mixed" and supported that finding with substantial evidence.  The relevant inquiry here is not whether some evidence supports a contrary conclusion, but whether the ALJ supported her findings with substantial evidence, *Biestek*, 587 U.S. at 103, which she did.

The ALJ accurately concluded that the evidence regarding Plaintiff's limitations in attending and completing tasks was "somewhat mixed" and supported her finding with substantial evidence.  She considered evidence showing that Plaintiff was not seriously limited in this functional domain, including evidence from Dr. Basch and Ms. DiPrinzo that Plaintiff was able to dress, bathe, and groom himself, and enjoyed drawing and playing with Legos.  R.  36-38.  The ALJ also considered evidence that, during some mental status exams, Plaintiff maintained appropriate eye contact, exhibited coherent and goal-directed thought processes, demonstrated fair insight and judgment, and could count and complete simple calculations.  *Id.*  The ALJ included consideration of Dr. Zoratti's notes reflecting that Plaintiff's thought processes were organized, he dressed appropriately, demonstrated intact insight and judgment, and showed improvement with proper medication.  R. 36.  Additionally, the ALJ considered evidence from Plaintiff's teacher indicating that he came to school prepared with completed homework assignments, was able to complete assigned work and work independently in class, maintained a positive attitude, participated in class discussions, and expressed his ideas verbally.  *Id.*

Moreover, the ALJ considered evidence that suggested that Plaintiff had some limitations in this functional domain, including evidence from Dr. Basch and Ms. DiPrinzo that Plaintiff had tantrums, failed to pay attention to detail, had difficulty sustaining attention, fidgeted and

15

squirmed, displayed out-of-seat behavior, exhibited impaired attention, concentration, and memory during some mental status exams, frequently argued with siblings, had poor relationships with peers, was disorganized, failed to follow through on instructions or complete work, and was unable to perform serial sevens or serial threes. R. 36-38. The ALJ also considered Dr. Zoratti's opinion that Plaintiff's attention, concentration, and memory were impaired, as well as school records showing that Plaintiff struggled to pay attention, remain still, and follow directions. R. 36.

Accordingly, the ALJ reasonably concluded that the record regarding Plaintiff's limitations in attending and completing tasks was somewhat mixed and properly supported that conclusion. Furthermore, since the evidence was not entirely consistent, it was the ALJ's role to weigh the evidence and reach a conclusion. *Rutherford*, 399 F.3d at 554.

## V.    CONCLUSION

The court finds that reversal of the ALJ's decision is not warranted, because the record is not yet fully developed. *Jones v. Barnhart*, No. CIV.A.03-6660, 2005 WL 2033383, at *9 (E.D. Pa. Aug. 23, 2005). Consequently, this case will be remanded to the ALJ with instructions to obtain additional school records to determine Plaintiff's reading level and whether he reads "near" grade level. The ALJ should then reevaluate the record, including Plaintiff's IQ score, consistent with this Memorandum.

An implementing Order will follow.